No. 23-50081

# United States Court of Appeals for the Fifth Circuit

Canadian Standards Association,

*Plaintiff-Appellee.*

v.

P.S. Knight Company, Limited; PS Knight Americas, Incorporated; Gordon Knight,

*Defendants-Appellants.*

*On appeal from the U.S. District Court for the Western District of Texas, Austin Division, No. 1:20-CV-1160-DAE, Judge David A. Ezra*

## APPELLANTS' OPENING BRIEF

James R. Gourley
Carstens, Allen & Gourley, LLP
7500 Dallas Pkwy, Suite 300
Plano, Texas 75024
gourley@caglaw.com

*Counsel for Appellants*

April 17, 2023

# Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Plaintiff-Appellee:** | **Counsel for Appellee:** |
|---|---|
| | Elizabeth Myers of Thompson Coburn, L.L.P. Dallas, TX |
| | Katherine Colvin of Thompson Coburn. L.L.P. Chicago, IL |
| | Jasmine Wynton of Thompson Coburn L.L.P Dallas, TX |
| Canadian Standards Association | Alex Dale Weidner of Thompson Coburn L.L.P St. Louis, MO |
| | Nicole L. Williams of Thompson Coburn L.L.P Dallas, TX |
| | Michael Parks of Thompson Coburn L.L.P. Chicago, IL |

**Defendant-Appellants:**

Gordon Knight;

P.S. Knight Company, Limited; and

PS Knight Americas, Incorporated

**Counsel for Appellants:**

James R. Gourley of Carstens, Allen & Gourley, LLP Plano, TX

Vincent J. Allen of Carstens, Allen & Gourley, LLP Plano, TX

*/s/ James R. Gourley*
James R. Gourley
*Counsel for Appellants*

## Statement Regarding Oral Argument

Appellants respectfully submit that oral argument is appropriate and necessary for this appeal.  This appeal raises significant First Amendment questions and questions regarding citizens' relationship with the law that binds them, as the district court's order would overturn every other model-code-adopted-as-law copyright case in the United States.

APPELLANTS' OPENING BRIEF

# Table of Contents

Certificate of Interested Persons ...............................................................i

Statement Regarding Oral Argument ...................................................... iii

Table of Contents....................................................................................iv

Table of Authorities ..............................................................................vii

Jurisdictional Statement...........................................................................1

Statement of the Issues ............................................................................1

I.      Statement of the Case................................................................2

        A.      The Codes have been adopted as law in Canada....................4

        B.      The Codes were drafted in part by individuals
                from Canadian governmental agencies and
                regulatory authorities, and individuals based in
                the United States. .......................................................9

        C.      The only allegations of copyright infringement in
                this case involve Codes that have been adopted as
                law in their entirety, and CSA has never alleged
                that Knight has made copies of content that was
                not adopted as law in Canada. ..............................................10

        D.      Questions Presented ............................................................11

II.     Summary of the Argument ...........................................................12

III.    Argument and Authorities..........................................................14

        A.      Standard of Review ...............................................................14

        B.      Under United States law, any alleged copyrights
                in judicial opinions, statutes, codes, ordinances,
                and the like, including the Codes, are not
                enforceable..........................................................................15

APPELLANTS' OPENING BRIEF

C.    Copyrights in model codes developed by private organizations and adopted as law are not enforceable under U.S. copyright law. ................................... 16

D.    CSA's ownership of copyrights in the Codes is irrelevant to the question of whether CSA can enforce those copyrights in the United States once the Codes have been adopted as law............................ 21

E.    The fact that the Codes have been adopted as Canadian law instead of U.S. law is a distinction without a difference. ............................................................... 24

F.    The Berne Convention does not allow copyrights in Canadian law to be enforced in the United States. ................................................................................. 25

G.    The district court misinterpreted and misapplied the law, especially *Veeck*, to the facts of this case in at least five different respects. .......................................... 28

H.    Three undisputed facts compel this Court to overturn the grant of summary judgment to CSA on the legal question of whether CSA's copyrights are enforceable: (1) the model codes at issue have been adopted as binding law, (2) Canadian governments, regulatory authorities, and U.S.-based individuals had a hand in drafting the codes, and (3) Knight was only accused of copying text that has been adopted as law.......................................... 32

I.    The district court's grant of summary judgment against Knight as to the fair use defense should be vacated. ............................................................................... 33

— v —

1.    The District of Columbia Circuit Court of Appeals decision in *Am. Soc'y for Testing & Materials* provides a more persuasive framework for analyzing the model-code-adopted-as-law fair use issues presented in this case. ........................................................................ 34

2.    The district court failed to consider the import and applicability of *Am. Soc'y for Testing & Materials* to Knight's fair use defense. ........................................................................ 39

Conclusion and Statement of Relief Sought ............................................ 41

Certificate of Service ............................................................................... 42

Certificate of Compliance ....................................................................... 43

APPELLANTS' OPENING BRIEF

# Table of Authorities

## Cases

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
   896 F.3d 437 (D.C. Cir. 2018) ...................................................... passim

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................ 14

*Banks v. Manchester*,
   128 U.S. 244 (1888) ............................................................................ 15

*Building Officials and Code Adm. v. Code Technology, Inc.*,
   628 F.2d 730 (1st Cir. 1980) ............................................................. 13

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ............................................................................ 35

*Exxon Corp. v. Baton Rouge Oil*,
   77 F.3d 850 (5th Cir. 1996) ............................................................... 14

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ..................................................................... 18, 19

*Georgia v. Public Resource.Org, Inc.*,
   140 S. Ct. 1498 (2020) ................................................................ 15, 19

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) ............................................................................ 18

*Int'l Code Council, Inc. v. UpCodes, Inc.*,
   No. 17 Civ. 6261 (VM), 2020 U.S. Dist. LEXIS 92324
   (S.D.N.Y. May 26, 2020) ................................................ 13, 20, 22, 23

*Practice Mgmt. Info. Corp. v. AMA*,
   121 F.3d 516 (9th Cir. 1997) ............................................................. 29

*Veeck v. S. Bldg. Code Cong. Int'l*,
   293 F.3d 791 (5th Cir. 2002) ...................................................... passim

*Wheaton v. Peters*,
   33 U.S. 591 (1834) .................................................................. 15

*White v. Ascension Par. Sch. Bd.*,
   343 F.3d 373 (5th Cir. 2003) .............................................. 14

## Statutes

17 U.S.C. § 102(b) ........................................................... 18, 27

17 U.S.C. § 104(c) .................................................................. 27

17 U.S.C. § 107 ...................................................................... 34

28 U.S.C. § 1291 ...................................................................... 1

28 U.S.C. § 1292 ...................................................................... 1

## Other Authorities

Berne Convention for the Protection of Literary Works, Sept. 9,
   1886, as revised Stockholm July 14, 1967, 828 U.N.T.S. 221 ........... 26

*Nimmer on Copyright* ............................................................ 17

APPELLANTS' OPENING BRIEF

# Jurisdictional Statement

This is an appeal from the Western District of Texas granting summary judgment and a permanent injunction against the Defendant-Appellants on January 4, 2023. This Court has jurisdiction under 28 U.S.C. § 1292, based on the grant of the permanent injunction. *See* ROA.5601–5603. This Court may also have jurisdiction under 28 U.S.C. § 1291, as the district court entered judgment on January 5, 2023, but this judgment may have been entered in error. Regardless, the Notice of Appeal (ROA.5605–5606) was timely filed less than 30 days after entry of the summary judgment/permanent injunction order and the entry of judgment.

# Statement of the Issues

(1) The Fifth Circuit sitting *en banc* in *Veeck v. S. Bldg. Code Cong. Int'l*, 293 F.3d 791 (5th Cir. 2002) held that copyrights in model building codes adopted as law in two small towns in Texas could not be enforced against an individual accused of copying that law. Was it legal error for the district court to (a) decide that copyrights in the Canadian Electrical Code, which has been adopted as binding law throughout

Canada, can be enforced against defendants-appellants under United States law, and (b) issue a permanent injunction on this basis?

(2) In 2018, the District of Columbia Circuit Court of Appeals found that summary judgment was not appropriate against a defendant's fair use defense when the defendant was accused of making copies of model codes that had been adopted as law. *See Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 453 (D.C. Cir. 2018). Was it legal error for the district court, in this case, to grant summary judgment against the defendants-appellants as to their fair use defense on similar facts?

## I.     Statement of the Case

At the district court, Canadian Standards Association ("CSA") accused P.S. Knight Co, Ltd., PS Knight Americas, Inc., and Gordon Knight (collectively, "Knight") of copyright infringement for making and selling copies of the Canadian Electrical Code and other model codes promulgated by CSA (the "Codes"). The Codes have been adopted as law in local and regional jurisdictions throughout Canada.

Knight's main argument against these allegations of copyright infringement relied on a significant body of precedent in the United

States holding that copyrights in model codes that have been adopted as binding law (and copyrights as to binding law generally) cannot be enforced under U.S. copyright law when the defendant has made copies of that law.  Chief among this precedent is an *en banc* decision from this Court in *Veeck*.

The parties filed cross-motions for summary judgment.  CSA moved for summary judgment as to copyright infringement, and Knight moved for summary judgment on the issue of unenforceability and consequent noninfringement of CSA's copyrights.  Knight also opposed CSA's summary judgment motion based on its unenforceability, fair use, and merger defenses.  In this appeal, merger is discussed in the context of *Veeck*, which used merger as one rationale to find copyrights in model codes adopted as law unenforceable.

The relevant facts in this case are largely undisputed:

1.     CSA has admitted that the Codes have been adopted as law in Canada; even if CSA had not admitted this, it is beyond any credible dispute.

APPELLANTS' OPENING BRIEF

2.     Canadian governments and regulatory authorities, as well as individuals based in the United States, had a hand in drafting the Codes.

3.     CSA has never alleged that any portion of the Codes copied by Knight have not been adopted as law in Canada.  In fact, CSA cannot allege this because the entirety of the Codes is adopted as law in Canada.

## A.    The Codes have been adopted as law in Canada.

CSA's complaint states that the Codes "have been incorporated by reference into several regulations and statutes in Canada for the installation and maintenance of electrical equipment, the design, construction and maintenance of pipeline systems, and the use, storage, handling and transfer of propane systems." ROA.2366 (¶ 2).  CSA's corporate representative also testified that he "believe[s] all jurisdictions in Canada have adopted the Canadian Electrical Code into their regulations." ROA.3176:8–13.

During previous litigation in Canada between the parties in this case, the Federal Court of Appeal in Canada acknowledged that the "introduction to the 2015 version of the CSA Electrical Code states that

it is a 'voluntary code for adoption and enforcement by regulatory authorities,'" and noted that the "Code has been adopted by the federal, provincial and territorial governments and incorporated by reference into legislation and regulations regarding electrical safety." ROA.203 (¶ 9). For example, according to the Court of Appeal in that case, the "*Canada Occupational Health and Safety Regulations*, SOR/86-304 incorporates the CSA Electrical Code as part of its definition of 'Canadian Electrical Code' that federally-regulated workplaces and employers are <u>required to comply</u> with." ROA.204 (¶ 10) (emphasis added). Also, according to the same Court of Appeal decision:

> At the provincial and territorial level, the CSA Electrical Code has been incorporated by reference into regulations and stat-utes setting standards for installation and maintenance of electrical equipment, sometimes with variation for local con-ditions (see, for example, Electrical Safety Regulation, B.C. Reg. 100/2004, s. 20; Electrical Code Regulation, Alta Reg. 209/2006, s. 3(a); The Electrical Code Regulations, R.R.S., c. E-6.3 Reg. 16, s. 3; Manitoba Electrical Code, M.R. 76/2018, s. 1; Electrical Safety Code, O. Reg. 164/99, s. 1; Construction Code, C.Q.L.R., c. B-1.1, r. 2, s. 5.01; General Regulation, N.B. Reg. 84-165, s. 2; Electrical Code Regulations, N.S. Reg. 95/99, s. 3; Canadian Electrical Code Regulations, P.E.I. Reg.

EC406/13, s. 2; Electrical Regulations, N.L.R. 120/96, s. 4; Electrical Protection Act, R.S.Y. 2002, c. 65, s. 1.01(1); Electrical Protection Act, R.S.N.W.T. 1998, c. E-3, s. 1(1); Electrical Protection Act, R.S.N.W.T. (Nu) 1988, c. E-3, s. 1(1)).

ROA.204 (¶ 11).

Additionally, in a different case, the Federal Court of Appeal in Ontario considered the evidentiary effect of regulations that had been incorporated by reference into legislation; it adopted the following statement of the law: "When material is incorporated by reference into a statute or regulation it becomes an integral part of the incorporating instrument as if reproduced therein." *Ontario v. St. Lawrence Cement Inc.*, 2002 CanLII 45010 (ON CA); ROA.3211. The Ontario Court of Appeal further noted that this result is consistent with a previous appeal in the British Columbia Court of Appeal, which held that "it was unnecessary to publish a regulatory standard incorporated by reference together with the regulation before a prosecution based on contravention of the standard could be pursued." *Id.* (citing *R. v. Sims*, 2000 CanLII 437 (BC CA)); *see also Mainwaring v. Mainwaring*, 1942 CanLII 248 (BC CA) ("The effect of such legislation [incorporated by

reference] is as though the extrinsic law referred to was written right into the Act."); ROA.3210.

The Codes are also frequently "adopted as amended," which means that CSA authors can change legislation by simply publishing a new version of the Codes.  For example, the Electrical Code Regulation of Alberta states as follows:

> The following codes, **as amended or replaced from time to time**, are declared in force in respect of electrical systems: (a) the CSA Standard C22.1-18 - 2018 Canadian Electrical Code, Part 1 (24th edition), Safety Standard for Electrical Installations, published by the CSA Group.

Electrical Code Regulation, Alta Reg.  209/2006, s.  3(a) (emphasis added); ROA.3245.

Similarly, the Electrical Code Regulations in the Province of Nova Scotia states that for purposes of those regulations, "'Code' means the latest issue of the Canadian Electrical Code, Part I, published by the Canadian Standards Association, the current issue of which is CSA Standard C22.1 - 2002 and as supplemented, amended or added to from time to time by the Canadian Standards Association." Electrical Code Regulations, N.S. Reg.  95/99, s. 2(c); *see* ROA.3248.

The Gas Inspection Regulations of Saskatchewan, implemented under The Gas Inspection Act, 1993, define the Propane storage and handling code as "CSA-B149.2020, as amended from time to time" and requires that any "person who installs equipment or apparatus that stores or handles propane shall install the equipment or apparatus in accordance with the *Propane storage and handling code*." The Gas Inspection Regulations, Chapter G-3.2 Reg 1, s. 16(1)(g), (3) (emphasis in original); *see* ROA.3265. The Canadian Energy Regulator Onshore Pipeline Regulations define "CSA Z662" as "CSA Standard Z662 entitled Oil and Gas Pipeline Systems, as amended from time to time," and requires that when "a company designs, constructs, operates or abandons a pipeline, or contracts for the provision of those services, the company shall ensure that the pipeline is designed, constructed, operated or abandoned in accordance with the applicable provisions of … CSA Z662." Canadian Energy Regulator Onshore Pipeline Regulations, SOR/99-294, s. 1 and 4(1); *see* ROA.3277.

**B.**    **The Codes were drafted in part by individuals from Canadian governmental agencies and regulatory authorities, and individuals based in the United States.**

The Canadian Court of Appeal also found during previous litigation between the parties here that the committee that drafted the Canadian Electrical Code included "several representatives of provincial, territorial and municipal electrical inspection authorities, certain federal departments and agencies," and others.  ROA.204–205 (¶ 12).

Individuals and companies who are based in the United States are also on the committees that drafted the Codes.  The copyright registration certificate for the Canadian Electrical Code lists Ben Johnson of Thermon, New Braunfels, Texas, USA, and Dave Clements of International Association of Electrical Inspectors, Richardson, Texas, USA as authors.  *See* ROA.3144; ROA.3165.  The copyright registration certificate for the Propane Storage and Handling Code lists Randy Ervin of Algas-SDI International, LLC, Seattle, Washington, USA as an author.  *See* ROA.3192; ROA.3195.  The copyright registration certificate for the Oil and Gas Pipeline Systems Code lists J.D.

Mackenzie of Kiefner and Associates, Inc., Bellingham Washington,

USA as an author.  *See* ROA.3180; ROA.3187.

    **C.**    **The only allegations of copyright infringement in this case involve Codes that have been adopted as law in their entirety, and CSA has never alleged that Knight has made copies of content that was not adopted as law in Canada.**

    Knight has never denied making and selling copies of the Canadian laws embodied in the Codes.  Knight also advertised that the Canadian Electrical Code "is passed into law both Federally and in every provincial and territorial jurisdiction in Canada" (ROA.5063) and that the other two Codes "have been passed into law in Alberta" (ROA.5052).

    Moreover, none of CSA's copyright infringement allegations ever differentiated between portions of the Codes that Knight was accused of copying on the one hand, and portions of the Codes that have been adopted as law in Canada on the other.  Specifically, CSA accused Knight of publishing books that contain "excerpts from the Canadian Electrical Code" and "copy very significantly from [the] Canadian Electrical Code," and in Counts III–V accuse Knight of distributing "unauthorized copies" of the Codes.  ROA.2385 (¶¶ 70, 72); ROA.2404 (¶

149); ROA.2406–2407 (¶ 163); ROA.2409 (¶ 177).  In other words, CSA admitted that the Codes have been adopted as law in "several regulations and statutes in Canada" (ROA.2366 (¶ 2)) and never alleged that any portion of the Codes that Knight is accused of copying were not adopted as law in Canada.  Finally, the local and regional laws cited above make no distinction between portions of the Codes that are and are not adopted as law; instead, they incorporate the entire Code document as the law.  It is not possible to interpret the facts of this case as involving anything other than Knight being accused of making and selling copies of Canadian law.

### D.    Questions Presented

Again, several courts in the United States (including this Court sitting *en banc*) have found that owners of copyrights in model codes adopted as law were not able to enforce those copyrights against alleged infringers.  One question presented to this Court is whether CSA is allowed to enforce any copyrights it owns in the Codes under United States law.  How the Berne Convention applies to these facts will play a role in this Court's decision.

APPELLANTS' OPENING BRIEF

The other question presented to this Court is whether it was proper to grant summary judgment to CSA as to Knight's fair use defense. In 2018, the D.C. Circuit Court of Appeals vacated a district court's grant of summary judgment in favor of a model code copyright owner against an accused infringer's fair use defense. That appellate court's reasoning should be applied in this case and summary judgment as to fair use vacated.

## II. Summary of the Argument

This Court sitting *en banc* in *Veeck* provided a detailed and exhaustive analysis of an issue almost identical to the one raised in this case: can copyrights in model codes that have been adopted as binding law be enforced against alleged infringers who have merely made copies of the law? This Court's "short answer [was] that as *law*, the model codes enter the public domain and are not subject to the copyright holder's exclusive prerogatives." *Veeck*, 293 F.3d at 793 (emphasis in original). Details about this Court's reasoning and why it should apply to model codes adopted as Canadian law are provided herein below.

Other court decisions are consistent with the broad principle set out in *Veeck*. The Southern District of New York considered an almost

identical question regarding model codes adopted as law and found that

the owner of copyright in the model code "cannot exercise its copyrights"

to prevent dissemination of its model codes adopted as law. *Int'l Code

Council, Inc. v. UpCodes, Inc.*, No. 17 Civ. 6261 (VM), 2020 U.S. Dist.

LEXIS 92324, at *52 (S.D.N.Y. May 26, 2020).  An earlier decision from

the First Circuit regarding copyrightability of model building codes

found the same: "it is hard to see how the public's essential due process

right of free access to the law (including a necessary right freely to copy

and circulate all or part of a given law for various purposes), can be

reconciled with the exclusivity afforded a private copyright holder."

*Building Officials and Code Adm. v. Code Technology, Inc.*, 628 F.2d

730 (1st Cir. 1980).

    This Court should follow its own precedent in *Veeck*, and the

nonbinding but persuasive authority outside this Circuit, and find that

CSA cannot enforce its copyrights in the Codes against Knight because

all he was accused of doing is making copies of the law of Canada.

    Alternatively, the Court should vacate the district court's grant of

summary judgment against Knight and in favor of CSA as to Knight's

fair use defense.  In a similar case involving model codes adopted as

law, the D.C. Circuit Court of Appeals found that the first three fair use factors weighed "heavily" or "strongly" in the alleged infringer's favor and remanded for further consideration of the fourth factor (market harm). Yet the district court here found that all four factors weighed "clearly" or "presumptively" in CSA's favor. This Court should consider the reasoning of the D.C. Circuit Court of Appeals, which was specific to the model-code-adopted-as-law issue, and determine whether that reasoning logically applies to the facts of this case.

## III.   Argument and Authorities

### A.   Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *See Exxon Corp. v. Baton Rouge Oil*, 77 F.3d 850, 853 (5th Cir. 1996). An injunction rendered pursuant to a grant of summary judgment is also reviewed *de novo*. *See White v. Ascension Par. Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003). This Court will not weigh the evidence or evaluate the credibility of witnesses; further, all justifiable inferences will be made in the nonmoving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.    Under United States law, any alleged copyrights in judicial opinions, statutes, codes, ordinances, and the like, including the Codes, are not enforceable.**

The Supreme Court's first ever ruling on copyright, the 1834 decision in *Wheaton*, held that it was "unanimously of opinion that no reporter has or can have any copyright in the written opinions delivered by this Court." *Wheaton v. Peters*, 33 U.S. 591, 668 (1834). In 1888, the Supreme Court further elucidated that the "question is one of public policy," and that the "judicial consensus" since *Wheaton* was that the work of judges is "the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all." *Banks v. Manchester*, 128 U.S. 244, 253 (1888). Revisiting the policy in 2020, the Supreme Court noted that courts have "long understood the government edicts doctrine to apply to legislative materials," and extended it to cover authoritative code annotations drafted by a private company. *Georgia v. Public Resource.Org, Inc.*, 140 S. Ct. 1498, 1507 (2020) (citations omitted).

This Court in *Veeck* summarized this foundational principle as follows: "'the law,' whether articulated in judicial opinions or legislative acts or ordinances, is in the public domain and thus not amenable to

copyright." *Veeck*, 293 F.3d at 796.  As a matter of public policy in the United States, any alleged copyrights in "the law"—even Canadian law—cannot be enforced under United States law because "the law" is in the public domain in the United States.

**C.  Copyrights in model codes developed by private organizations and adopted as law are not enforceable under U.S. copyright law.**

This Court's detailed and thoughtful *en banc* decision in *Veeck* is almost exactly on point to the facts of this case.  *Veeck* analyzed whether an owner of copyrights in model building codes developed by a private organization that had been adopted as law by the towns of Anna, Texas and Savoy, Texas could be infringed when the codes were copied as the law in those towns.  *See id*. at 793.  The model building codes (titled <u>Standard Building Code</u>) were authored by Southern Building Code Congress International, Inc. ("SBCCI"), "a non-profit organization consisting of approximately 14,500 members from government bodies, the construction industry, business and trade associations, students, and colleges and universities."  *Id*.

After surveying Supreme Court and other circuit precedent, this Court plainly held that "when Veeck copied only 'the law' of Anna and

Savoy, Texas, which he obtained from SBCCI's publication, and when he reprinted only 'the law' of those municipalities, he did not infringe SBCCI's copyrights in its model building codes." *Id*. at 800.  According to *Nimmer on Copyright*, *Veeck* remains "the most definitive pronouncement" on privately authored model codes adopted as law, even after *Georgia*.  *See* 1 *Nimmer on Copyright* § 5.12 (2020).

 *Veeck* reached the conclusion that copyrights in model codes adopted as law were not enforceable based on two separate rationales. One rationale was based precisely on the Supreme Court's holding in *Banks* that the "whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all."  Consequently, according to *Veeck*, "public ownership of the law means precisely that 'the law' is in the 'public domain' for whatever use the citizens choose to make of it." *Veeck*, 293 F.3d at 799.

 *Veeck* then used an authorship construct to support this conclusion:

> [W]hen a governmental body consciously decides to enact pro-
> posed model building codes, it does so based on various legis-
> lative considerations, the sum of which produce its version of

> "the law."  In performing their function, the lawmakers rep-
> resent the public will, and the public are the final "authors" of
> the law.

*Id.*  The second rationale *Veeck* used to place model codes adopted as

law in the public domain was based on the doctrine of merger.  The

Copyright Act "excludes from copyright protection ideas, procedures,

processes, systems methods of operation, or information in the public

domain."  *Id.* at 801 (citing 17 U.S.C. § 102(b); *Feist Publications, Inc. v.*

*Rural Tel. Serv. Co.,*499 U.S. 340, 350 (1991); *Harper & Row*

*Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547–48 (1985)).

Further, if "an idea is susceptible to only one form of expression, the

merger doctrine applies and § 102(b) excludes the expression from the

Copyright Act."  *Id.  Veeck* then held as follows:

> Veeck copied the building code of the towns of Anna and Sa-
> voy, Texas, based on their adoption of a version of the SBCCI
> model code.  The codes are "facts" under copyright law.  They
> are the unique, unalterable expression of the "idea" that con-
> stitutes local law.

*Id.  Veeck* further explained:

It should be obvious that for copyright purposes, laws are "facts": the U.S. Constitution is a fact; the Federal Tax Code and its regulations are facts; the Texas Uniform Commercial Code is a fact. Surely, in principle, the building codes of rural Texas hamlets are no less "facts" than the products of more August legislative or regulatory bodies. While the Supreme Court has not stated directly that laws are "facts," it has broadly observed that, as with census data, "the same is true of all facts -- scientific, historical, biographical and news of the day. They may not be copyrighted and are part of the public domain available to every person."

*Id.* (quoting *Feist*, 499 U.S. at 348).

There is also nothing in the Supreme Court's recent ruling in *Georgia* that contradicts any of this Court's analysis in *Veeck*, and either rationale used by *Veeck* can be used to find that the Canadian Electrical Code and other Canadian Code copyrights cannot be enforced in the United States. Indeed, the State of Georgia did not even attempt to argue to the Supreme Court that the binding portions of the Georgia Code were protectable by copyright. *See Georgia*, 140 S. Ct. at 1512–13 (noting that "Georgia minimizes the OCGA annotations as non-binding and non-authoritative…" and postulating that if "everything short of statutes and opinions were copyrightable, then States would be free to

APPELLANTS' OPENING BRIEF

offer a whole range of premium legal works for those who can afford the extra benefit").  Binding law is so obviously not subject to copyright protection in the United States that it is now simply assumed as a matter of course.

This Court in *Veeck* was following the logic of an earlier decision from the First Circuit regarding copyrightability of model building codes: "it is hard to see how the public's essential due process right of free access to the law (including a necessary right freely to copy and circulate all or part of a given law for various purposes), can be reconciled with the exclusivity afforded a private copyright holder." *Veeck*, 293 F.3d at 803 (quoting *Building Officials and Code Adm. v. Code Technology, Inc.*, 628 F.2d 730, 736 (1st Cir. 1980)).

A more recent case in the Southern District of New York involving model building codes drafted by the International Code Council ("ICC") similarly held that in the "narrow band of substantial adoption by state and local governments, ICC cannot exercise its copyrights" to prevent dissemination of its model codes adopted as law.  *UpCodes, Inc.*, 2020 U.S. Dist. LEXIS 92324, at *52.

Thus, the overwhelming weight of authority suggests that purported copyrights in binding Canadian law cannot be enforced under the copyright laws of the United States.

**D.  CSA's ownership of copyrights in the Codes is irrelevant to the question of whether CSA can enforce those copyrights in the United States once the Codes have been adopted as law.**

This Court in *Veeck* found that "[a]s the organizational author of original works, SBCCI indisputably holds a copyright in its model building codes." *Veeck* 293 F.3d at 794.  The *Veeck* court reiterated this position as follows:

> SBCCI is the "author" of model building codes that, qua model building codes, are facially copyright-protected.  This is true even if *Banks* places the building codes of Anna and Savoy, and other governmental entities that adopted part or all of SBCCI's model codes, in the public domain.

*Id.* at 800.  The Southern District of New York in *UpCodes* similarly acknowledged that a model code author plaintiff owned copyrights in that code: "ICC certainly retains its copyrights in its model codes as model codes, and the Court will not construe state or local adoption of the I-Codes to suggest otherwise."  *UpCodes*, 2020 U.S. Dist. LEXIS

92324, at *41.  In fact, in the *UpCodes* decision, it was "undisputed that ICC has valid copyrights in the I-Codes."  *Id.* at *18.

However, once those codes fulfill their intended purpose of being adopted as law, the copyrights become unenforceable to the extent that parties are accused of copying the law.  *Veeck* noted that "SBCCI encourages local government entities to enact its codes into law by reference."  *Veeck*, 293 F.3d at 794.  And although *Veeck* acknowledged that these model codes are "copyrightable works of authorship," when "those codes are enacted into law, however, they become to that extent 'the law' of the governmental entities and may be reproduced or distributed as 'the law' of those jurisdictions."  *Id.* at 802.  The end result, according to *Veeck*, is that "public ownership of the law means precisely that 'the law' is in the 'public domain' for whatever use the citizens choose to make of it.  Citizens may reproduce copies of the law for many purposes, not only to guide their actions but to influence future legislation, educate their neighborhood association, or simply to amuse."  *Id.* at 799.

The *UpCodes* decision largely accords with *Veeck*.  Based on a detailed survey of the applicable case law, *UpCodes* found that it was

"ultimately consistent" and "compels a holding that the [model codes
adopted as law] are in the public domain, because they are in fact
enacted state and local laws binding on the enacting jurisdictions'
constituents." *UpCodes*, 2020 U.S. Dist. LEXIS 92324, at *18–19.
*UpCodes* went on to hold that "the controlling authorities make clear
that a private party cannot exercise its copyrights to restrict the public's
access to the law." *Id.* at *19.

The *Veeck* and *UpCodes* decisions are also largely consistent with
the First Circuit's decision in *Bldg. Officials & Code Adm.* ("*BOCA*").
There, although it stopped short of issuing a final ruling on the issue,
the First Circuit found it "hard to see how the public's essential due
process right of free access to the law (including a necessary right freely
to copy and circulate all or part of a given law for various purposes), can
be reconciled with the exclusivity afforded a private copyright holder."
*Bldg. Officials & Code Adm. v. Code Tech., Inc.*, 628 F.2d 730, 736 (1st
Cir. 1980).

In sum, it is irrelevant for purposes of this appeal who owns the
copyrights in the model codes. No one, including CSA, may enforce
those copyrights in the United States once the model codes have been

— 23 —
APPELLANTS' OPENING BRIEF

adopted as law when the accusations involve copying the law, as they do here.

### E.     The fact that the Codes have been adopted as Canadian law instead of U.S. law is a distinction without a difference.

Under the Supreme Court and Fifth Circuit precedent discussed above, the law is in the public domain and any copyright owned by CSA cannot be infringed in the United States to the extent it involves allegations of copying the law.  It is of no consequence that the Codes have not been adopted as law *in the United States*.  In the same way that an individual who resides in Texas could be bound by Georgia law under a variety of circumstances, United States citizens and companies are bound by the Canadian Codes when they manufacture electrical products for sale or perform other Codes-related work in those Canadian jurisdictions that have adopted the Codes.  The economies of the United States and Canada are so intertwined and interdependent that it would be a gross violation of United States law and public policy to allow any exclusive ownership of Canadian law to be enforced here. Further, individuals based in the United States contribute authorship to the Codes.

Thus, even though the Codes are Canadian law, the fact that individuals and companies based in the United States are involved in drafting them and are bound by them requires that any alleged copyrights in Canadian law be unenforceable in the United States. And even if these factors were not present, the law of the United States does not enforce copyrights against those who make copies of binding law as a matter of fundamental public policy.

## F.   The Berne Convention does not allow copyrights in Canadian law to be enforced in the United States.

The law of the United States holds that the owner of a purported copyright in model codes adopted as law cannot sue for copyright infringement, as set forth in binding Supreme Court and Fifth Circuit precedent, and non-binding but convincing precedent from other courts. The Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention"), which the United States has signed and implemented, does not change this outcome.

The Berne Convention states that an author's enjoyment and exercise of rights "shall be independent of the existence of protection in the country of origin of the work" and that "the extent of protection, as well as the means of redress afforded to the author to protect his rights,

APPELLANTS' OPENING BRIEF

shall be governed *exclusively* by the laws of the country where

protection is claimed." Berne Convention for the Protection of Literary

Works art. 5(2), Sept. 9, 1886, as revised Stockholm July 14, 1967, 828

U.N.T.S. 221, 233 (emphasis added). Here, CSA is alleging that the

country of origin for the codes is Canada, and that its alleged rights are

"protected by U.S. copyright law." ROA.2368 (¶ 10). The laws where

protection is claimed—the laws of the U.S.—do not enforce copyrights in

"the law."

Article 5(1) of the Berne Convention states that countries outside

the country of origin must afford authors "the rights which their

respective laws do now or may hereafter grant to their nationals."

Berne, Art. 5(1), 828 U.N.T.S. at 233. Similarly, under Article 5(3),

although not applicable here because CSA is proceeding under the

theory that Canada is the country of origin, even if the United States

was considered the country of origin, any Canadian authors "shall enjoy

in [the United States] the same rights as national authors." *Id.* As

discussed above, the United States does not allow United States

nationals to enforce copyrights in their contributions to "the law."

Therefore, if this Court treats a Canadian author's contributions to "the

APPELLANTS' OPENING BRIEF

law" like it would a United States national's contribution to "the law," a holding that copyrights in the law of Canada are not enforceable in the United States would be entirely consistent with the Berne Convention.

Finally, the Copyright Act states in no uncertain terms that the Berne Convention cannot be used to create or change any copyright interests protected under United States law.  *See* 17 U.S.C. § 104(c). Again, under the Berne Convention, "the extent of protection … shall be governed exclusively by the laws" of the United States.  And § 102(b) of the Copyright Act proscribes the extent of copyright protection in the United States as follows: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  Section 102(b) was cited by this Court in *Veeck* as one rationale for denying copyright protection in model codes adopted as law under the merger doctrine, and it should apply to CSA's copyrights as well.

The bottom line is that CSA is subject to United States copyright law in this case, and that law does not enforce copyright protection in "the law."

### G.   The district court misinterpreted and misapplied the law, especially *Veeck*, to the facts of this case in at least five different respects.

First, the district court misinterpreted *Veeck* by limiting its application solely to "works that have been incorporated into the federal, state, or local laws *of the United States*." ROA.5579 (emphasis in original).  But under *Veeck*'s merger rationale, why should the laws of Canada not qualify as "facts" alongside the other statutes and codes cited in that decision?

In the ensuing sentence, the district court also incorrectly cited § 105(a) of the Copyright Act for the same proposition—that only U.S. laws are excluded from copyright protection.  *See* ROA.5579.  But again, a careful reading of *Veeck* reveals that its merger position was based on § 102(b) and Supreme Court precedent, not § 105(a).  *See Veeck,* 293 F.3d at 801–802.

Second, the district court misapplied the defense of merger under *Veeck* by restricting its application solely to whether CSA owns

APPELLANTS' OPENING BRIEF

copyrights in the Codes. *See* ROA.5588. But *Veeck* stated numerous times that SBCCI owned copyrights in its model codes. *See Veeck,* 293 F.3d at 794, 800. SBCCI only lost the ability to enforce those copyrights under the doctrine of merger insofar as it was accusing Veeck of distributing copies of the law. *Veeck,* 293 F.3d at 802.

Third, the district court dropped a footnote incorrectly contending that even if *Veeck* did apply here, "Defendants have not shown the Court that they publish merely Canadian law, rather than a wholesale replica of CSA's model code, as a model code." ROA.5589 (n. 10). Under the facts of this case, it is impossible to publish a copy of Canadian law without also publishing a copy of the model code because the model code is adopted as law in its entirety in Canada.

The quote from *Veeck* cited in the district court's footnote 10 as support for this proposition was from a paragraph in *Veeck* that was distinguishing a Ninth Circuit case called *Practice Mgmt.,* which involved copyright protection in "the American Medical Association's copyrighted coding system for reporting physicians' services and medical procedures." *Veeck*, 293 F.3d at 805 (distinguishing *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 520 (9th Cir. 1997)). In

*Practice Mgmt.*, the Federal Health Care Financing Administration (HCFA) used the AMA's coding system as a partial basis for its "HCFA common procedure coding system (HCPCS)," which "incorporated AMA's code but also included additional information." *Id*. The Court in *Veeck* noted that it is not clear how *Practice Mgmt.* would have been decided if the accused infringer had published a copy of the HCPCS, including the additional information added by the HCFA, rather than the AMA code by itself. *See id*.

Here again, there is no allegation in this case that any changes to the Codes are made by the local or regional jurisdictions when the Codes are adopted as law. Further, the citations and quotations to Canadian law discussed previously show that, at least in those jurisdictions, no changes are made to the Codes when they are adopted as law. So it is impossible to make copies of Canadian law without also making copies of the Codes.

Fourth, the district court wrongly stated that the "bulk of [Knight's] argument relates to the first element of direct copyright infringement: whether CSA owns a valid copyright in its works." ROA.5577. To the contrary, as Knight discussed in detail in the district

APPELLANTS' OPENING BRIEF

court briefing and reiterated here, there is no need to resolve any question of ownership or validity in determining that CSA's copyrights are unenforceable under United States law.  Again, the judicial decisions that are closest on point to this case involve the enforceability of copyrights in privately drafted model codes that have been adopted as law, and those decisions acknowledge that the drafter owns valid copyrights in the model code.

Fifth, the district court misapplied the Berne Convention, which holds that United States law exclusively governs "the extent of protection" given to foreign works.  And as this Court held in *Veeck*, § 102(b) of the Copyright Act proscribes extending copyright protection to the law.  Thus, even foreign works are subject to the strictures of § 102(b) because it defines the extent of copyright protection in the United States, which means foreign copyrights are not enforceable in the U.S. as to persons accused of making copies of the law.

**H.** **Three undisputed facts compel this Court to overturn the grant of summary judgment to CSA on the legal question of whether CSA's copyrights are enforceable: (1) the model codes at issue have been adopted as binding law, (2) Canadian governments, regulatory authorities, and U.S.-based individuals had a hand in drafting the codes, and (3) Knight was only accused of copying text that has been adopted as law.**

The only facts relevant to the fundamental question of whether copyrights in the law of Canada can be enforced under United States law are undisputed and are dispositive in favor of Knight.

CSA admits that the Codes "have been incorporated by reference into several regulations and statutes in Canada for the installation and maintenance of electrical equipment; the design, construction, and maintenance of pipeline systems; and the use, storage, handling, and transfer of propane systems." ROA.2366 (¶ 2). As discussed above, the Federal Court of Appeal in Canada agrees, and further has held that regulations incorporated by reference are treated as if they have been bodily transcribed into the legislation.

CSA also cannot dispute that Canadian governments and regulatory authorities, and U.S.-based individuals, had a hand in drafting the Codes at issue. The federal courts in Canada already determined that the Canadian government was involved in the drafting,

and CSA's own Canadian copyright registration certificates show that U.S.-based individuals were listed as authors.

Further, there is not a single factual allegation in CSA's complaint or briefing that suggests Knight is accused of copying anything other than model code text which has been drafted, at least in part, by Canadian governments and regulatory authorities, and adopted as the law in Canada.

Under the Berne Convention and the copyright laws of the United States, CSA cannot enforce any copyright it may possess in such codes because Knight was doing nothing more than copying the law of Canada.

## I.  The district court's grant of summary judgment against Knight as to the fair use defense should be vacated.

When considering whether a particular use is fair, courts must consider the following factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the

potential market for or value of the copyrighted work. *See* 17 U.S.C. §

107. The district court did not correctly apply these factors.

> **1. The District of Columbia Circuit Court of Appeals decision in *Am. Soc'y for Testing & Materials* provides a more persuasive framework for analyzing the model-code-adopted-as-law fair use issues presented in this case.**

In 2018, the District of Columbia Circuit Court of Appeals

considered whether an organization called Public.Resource.Org could

assert the defense of fair use when it published complete copies of

privately developed model codes that were adopted as law or

incorporated into regulations to varying extents. *See Am. Soc'y for*

*Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 441–43

(2018). In doing so, it recognized that it was "avoiding the

constitutional question" of whether copyrights in the law may persist.

*Id.* at 447. After considering the four fair use factors, the D.C. Circuit

concluded that "genuine issues of material fact preclude summary

judgment for either party." *Id.* at 453. The Court here should do at

least the same.

As to the first factor, the D.C. Circuit faulted the district court for

failing "to adequately consider whether, in certain circumstances,

distributing copies of the law for purposes of facilitating public access could constitute transformative use." *Id.* at 450.  The court further noted that where "an incorporated standard provides information essential to comprehending one's legal duties, for example, this factor would weigh heavily in favor of permitting a nonprofit seeking to inform the public about the law to reproduce in full the relevant portions of that particular standard." *Id.*

Here, although Knight was not publishing copies of the law as a nonprofit, it was offering copies of Canadian law for sale at a lower price than CSA.  This lower price would provide the public with easier access to "one's legal duties" and weigh in favor of Knight on the first factor.  Also, the D.C. Circuit noted that a nonprofit is not insulated from infringement "any more than commercial character of a use bars a finding of fairness." *Id.* at 449 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 587 (1994)).  At best for CSA, the first factor would be neutral under *Am. Soc'y for Testing & Materials*.

As to the second factor, the D.C. Circuit found that "All of the works at issue here fall at the factual end of the fact-fiction spectrum, which counsels in favor of finding fair use." *Id.* at 451.  And given that

"the express text of the law falls plainly outside the realm of copyright

protection … we think that standards incorporated by reference into

law are, at best, at the outer edge of 'copyright's protective purposes.'"

*Id.*  Further, where "the consequence of the incorporation by reference

is virtually indistinguishable from a situation in which the standard

had been expressly copied into law, this factor weighs heavily in favor of

fair use." *Id.* at 452.

Here, as described previously, all of the codes at issue have been

adopted as binding law in Canada.  Further, a Canadian appellate court

has found that when "material is incorporated by reference into a

statute or regulation it becomes an integral part of the incorporating

instrument as if reproduced therein." *Ontario v. St. Lawrence Cement

Inc.*, 2002 CanLII 45010 (ON CA); ROA.3211.  The Codes plainly fall, at

best, at the outer edge of "copyright's protective purposes" under United

States law, and the second factor weighs heavily in favor of Knight.

As to the third factor, the D.C. Circuit found that when the

defendant "limits its copying to only what is required to fairly describe

the standard's legal import, this factor would weigh strongly in favor of

APPELLANTS' OPENING BRIEF

finding fair use here, especially given that precision is ten-tenths of the law." *See Am. Soc'y for Testing & Materials*, 896 F.3d at 452.

Here again, the Codes at issue in this case have been adopted wholesale as law in Canada, and the only way for the public to know their legal obligations is to have a copy of the law. The third factor should weigh "strongly" in favor of Knight's fair use defense.

And for the fourth factor, the D.C. Circuit remanded for further factual determinations on the harm to the market that was allegedly being caused by the defendant's publications in that case. *See id*. at 452–53.

Here, CSA has presented almost no evidence, if any, and no accounting-based evidence, of market harm caused by Knight's actions. CSA's corporate representative testified that the price of a paper copy of the Canadian Electrical Code has been "relatively stable" over the last ten years. ROA.5496:5–11. He also testified that CSA has been able to update the Canadian Electrical Code since 2015 "the way we typically have." ROA.5497:7–10. The only allegation of harm to the market for the works in the CSA corporate representative's testimony was an allegation of lost sales, but when asked if he had any evidence of lost

sales, he responded "I'd have to look into that."  ROA.5497:23–25.  He also said he had no evidence to suggest that the following statement from CSA's complaint is incorrect: "the Canadian Electrical Code has always been and remains CSA's best-selling work or one of its best-selling works."  ROA.5498:22–5499:5; *see also* ROA.2380 (¶ 50).  At the very least, CSA should be required to come forth with more evidence of market harm than they have to-date before the Court can weigh the fourth factor in its favor.

Finally, the concurrence in *Am. Soc'y for Testing & Materials* by Judge Katsas was particularly forceful and instructive.  After noting the strong precedent in favor of the defendant in that case on the ultimate question of copyright protection in "the law," Judge Katsas concluded as follows:

> But, where a particular standard is incorporated as a binding legal obligation, and where the defendant has done nothing more than disseminate it, the Court leaves little doubt that the dissemination amounts to fair use.
>
> With that understanding, and recognizing that the Section 102(b) and constitutional issues remain open in the unlikely

APPELLANTS' OPENING BRIEF

event that disseminating "the law" might be held not to be fair use, I join the Court's opinion.

*Am. Soc'y for Testing & Materials*, 896 F.3d at 459.

### 2.    The district court failed to consider the import and applicability of *Am. Soc'y for Testing & Materials* to Knight's fair use defense.

The district court completely disagreed with or disregarded the analysis above. The only difference between this case and *Am. Soc'y for Testing & Materials* is that Knight is a commercial, for-profit actor, yet the district court found that all four factors weigh in favor of CSA. There was no acknowledgement, for example, of the D.C. Circuit's correct holding that "standards incorporated by reference into law are, at best, at the outer edge of 'copyright's protective purposes'" under the second factor.

As to the third factor, the district court dropped a footnote expressing the incorrect belief that Knight had not sufficiently shown that it had "merely copied the 'laws' of Canada, as opposed to CSA's Copyrighted Works." ROA.5594 (n.13). The clear error here lies in the fact that CSA's model codes are adopted as law wholesale. For example, the electrical laws of Nova Scotia states: "'Code' means the latest issue

APPELLANTS' OPENING BRIEF

of the Canadian Electrical Code, Part I, published by the Canadian Standards Association, the current issue of which is CSA Standard C22.1 - 2002 and as supplemented, amended or added to from time to time by the Canadian Standards Association." Electrical Code Regulations, N.S. Reg. 95/99, s. 2(c).

There is also no indication here that any sections or subsections of the Codes are exempted from adoption. So, the district court's admonition in that same footnote that "Knight's Codes are broken down not by reference to any law where the standards might be found, but by the exact sections and subsections of CSA's Copyrighted Works" makes no sense. As *Am. Soc'y for Testing & Materials* noted under the third factor, "precision is ten-tenths of the law." *Id*. at 452. If the Codes are adopted as law wholesale, which they are, there is no other way to make copies of the law than to use the exact sections and subsections of the Codes, because the entire Code is the law.

If this Court is not inclined to follow *Veeck* and overturn summary judgment on infringement based on the unenforceability of copyrights in model codes adopted as law, the Court should nevertheless vacate the

APPELLANTS' OPENING BRIEF

district court's grant of summary judgment against Knight as to the fair use defense and remand for further proceedings.

## Conclusion and Statement of Relief Sought

CSA's attempt to use the copyright laws of the United States to enforce whatever rights it may have under Canadian law should be summarily rejected. The law of the United States is clear: no one can use their copyrights in model codes to stop others from making copies of binding law. And CSA cannot use the Berne Convention to alter United States law in a way that would eviscerate well-settled public policy of the United States. If CSA believed it had claims against Knight under Canadian law, it should have asserted them in a venue and under legal theories that are appropriate for such claims. But an action in a United States federal district court for copyright infringement under United States law is not appropriate under the undisputed facts of this case.

Alternatively, this Court should follow the well-reasoned decision of the D.C. Circuit Court of Appeals, find that the fair use factors favor Knight, are neutral, or are undecided. It should then vacate the district court's grant of summary judgment against Knight's fair use defense, and remand for proceedings consistent with the Court's opinion.

Dated:  April 17, 2023                    Respectfully submitted,

                                          */s/James R. Gourley*

                                          James R. Gourley
                                          Texas State Bar No. 24050679
                                          Carstens, Allen & Gourley, LLP
                                          7500 Dallas Pkwy, Suite 300
                                          Plano, Texas 75024
                                          (972) 367-2001
                                          (972) 367-2002 Fax
                                          gourley@caglaw.com

                                          *Counsel for Appellants*

## Certificate of Service

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on April 17, 2023, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

                                          */s/James R. Gourley*
                                          James R. Gourley

# Certificate of Compliance

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1:

▪     this document contains 7,993 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

▪     this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 with a 14-point Century Schoolbook font.


*/s/James R. Gourley*
James R. Gourley

APPELLANTS' OPENING BRIEF