# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 9, 2024
Lyle W. Cayce
Clerk

No. 23-50081

Canadian Standards Association,

*Plaintiff—Appellee*,

*versus*

P.S. Knight Company, Limited; PS Knight Americas, Incorporated; Gordon Knight,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-1160

Before King, Willett, and Douglas, *Circuit Judges*.

King, *Circuit Judge*:

Our prior panel opinion, *Canadian Standards Ass'n v. P.S. Knight Co.*, 108 F.4th 329 (5th Cir. 2024), is WITHDRAWN. The following panel opinion is SUBSTITUTED:

This international copyright case considers the alleged infringement of seven of Plaintiff-Appellee's model codes, all of which were created and copyrighted in Canada. The district court, finding that Defendants-Appellants infringed Plaintiff-Appellee's copyrights, denied Defendants-Appellants' motion for summary judgment, granted Plaintiff-Appellee's

motion for summary judgment, and issued a permanent injunction against Defendants-Appellants. Because we find that the district court improperly applied the explicit and controlling holding of *Veeck v. Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002) (en banc), we REVERSE the district court's summary judgment decisions, VACATE the district court's grant of injunctive relief, and REMAND with instructions to grant summary judgment in favor of Defendants-Appellants and to dismiss Plaintiff-Appellee's copyright infringement claim.

**I.**

Canadian Standards Association ("CSA") is a Canadian not-for-profit corporation. It has developed over 3,000 voluntary standards and codes in Canada, and it holds Canadian copyright registrations in its model codes and standards. CSA sells these codes to relevant tradespeople working in industrial fields in Canada. Forty percent of CSA's works have been incorporated by reference into different regulations or statutes in Canada.

Seven of CSA's copyrighted model codes are at issue in this case.[1] All seven of these model codes have been fully incorporated by reference into at least one Canadian statute or regulation. There is no evidence to suggest that any of these seven works have been incorporated by reference into any United States federal, state, or city law, rule, or regulation.

Gordon Knight is the president and sole shareholder of the Canadian company P.S. Knight Co., and the sole corporate director of the American company P.S. Knight Americas, Inc. (hereinafter, collectively, "Knight").

[1] Those seven model codes are the 2015, 2018, and 2021 editions of CSA's Canadian Electrical Code; the 2015 and 2020 editions of CSA's Propane Storage and Handling Code; and the 2015 and 2019 editions of CSA's Oil and Gas Pipeline Systems Code.

Knight is also the owner and operator of the website "Deep 6 Project," formerly "restorecsa.com," dedicated to discussing the copyright litigation between CSA and Knight. Knight, through his companies, sells competing versions of CSA's seven copyrighted works, which Knight describes as, "Same Code[s]—Different Price," and, "All the Code[s] at less than ½ the cost!"

**A.**

The dispute between CSA and Knight originated in 1985, when Knight's father, Peter Knight, published the first "Electrical Code Simplified" book, which included references to CSA's Canadian Electrical Code. CSA alleges that over time, the "Electrical Code Simplified" transformed from an annotated, shorter version of CSA's model code to an exact replica. CSA attempted to acquire Peter Knight's business, but in 2005, after negotiations broke down, CSA wrote a letter to Gordon Knight stating that "it wanted its copyright in the Canadian Electrical Code respected." In 2011, after Gordon Knight officially assumed control of the company from his father, CSA again informed Knight that he had "no license [in the Canadian Electrical Code]" and even if there ever was a license, it "had been terminated since at least 2005."

After Knight failed to oblige, CSA filed suit against Knight in Canadian federal court, alleging copyright infringement of its 2015 Canadian Electrical Code. The Canadian trial court ruled in favor of CSA,[2] and it enjoined Knight from reproducing, distributing, or selling any publication

[2] The Canadian trial court held that (1) CSA owned a valid copyright in its 2015 Canadian Electrical Code under Canadian law; (2) Knight presented no valid evidence to support his defense that he was a co-author of the code; (3) Knight had no license to reproduce the code; and (4) Knight infringed CSA's copyright.

that infringes upon CSA's copyright in its 2015 Canadian Electrical Code. On December 7, 2018, this judgment was affirmed on appeal.

On June 17, 2020, Knight formed P.S. Knight Americas, Inc. in the State of Texas. On September 1, 2020, Knight applied for, and successfully registered, a U.S. Copyright for "Knight's Canadian Electrical Code, Part One: 24th Code Edition, 2018-2021" under the name "Canadian Electrical Code."[3] Knight then began to produce his own versions of other CSA model codes. By June 18, 2021, Knight offered four competing versions of CSA's codes.[4]

On May 9, 2021, Knight authored a blog post explaining that he had "fled the Country" because "both sides of the Civil Service were now moving rapidly to imprison [him] and take all that [he] own[ed]." The blog post specified, however, that Knight's codes would be "unaffected" and that "[f]or months, [Knight] had been quietly transferring [his] assets out of Canada . . . to ensure continuity of service." On July 20, 2021, CSA requested that the Canadian federal court issue a contempt order against

---

[3] In a blog post published on October 18, 2020, Knight explained: "Next, we checked US copyright on the Electrical Code. It turns out that the Canadian Standards Association (CSA) somehow forgot to register copyright over this document, even while it was under litigation in Canada. Seriously. They spent well over a million dollars in Canadian Courts, arguing that they own all our electrical laws and they feverishly pointed to their registration of copyright in Canada but, amazingly, didn't bother to lock down copyright in the US. So we did. As you read this, the Canadian Electrical Code is the private property of PS Knight Americas Inc in the US. Can you just imagine the fuming at CSA headquarters as they read that last sentence? All that taxpayer money, all that time, and frustration and, frankly, embarrassment in the industry for their conduct -all of that to no avail. Wow. Must be a difficult day over there."

[4] The four competing versions were: (1) Knight's Canadian Electrical Code, Part One: 24th Code Edition, 2018-2021; (2) Knight's Canadian Electrical Code – 25th Edition, 2021-2024; (3) Knight's Propane Storage & Handling Code – 2015 Edition; and (4) Knight's Oil & Gas Pipeline Systems Code – 2019 Edition.

Knight. The Canadian court found Knight in contempt and extended its previous injunction.

On November 5, 2021, the Canadian federal court permanently enjoined Knight from infringing CSA's copyrights by selling certain electrical, oil and gas pipeline systems, and propane codes.[5] The Canadian court also prohibited Knight from "importing into Canada [any infringing works]" and operating any website for the purpose of infringing CSA's copyrights, and it awarded CSA $100,000 in statutory damages and $75,000 in punitive damages.

**B.**

While this Canadian litigation was occurring, on November 20, 2020, CSA filed suit against Knight in federal district court in the Western District of Texas. In its amended complaint, CSA alleged that Knight infringed seven of CSA's copyrights in its model codes. CSA sought a declaratory judgment of invalidity and non-ownership of Knight's United States copyright registration. Knight responded by asserting counterclaims of invalidity or unenforceability of CSA's seven Canadian-copyrighted works.[6] Both parties moved for summary judgment on their claims, defenses, and counterclaims.

On January 4, 2023, the district court granted CSA's motion for summary judgment in its entirety and denied Knight's motion for summary

---

[5] More specifically: (1) Knight's 2021 Canadian Electrical Code, in violation of CSA's copyright C22.1.21: Canadian Electrical Code, Part 1; (2) Knight's 2015 Oil & Gas Code, in violation of CSA's copyright CSA Z662-15: Oil and Gas Pipeline Systems; (3) Knight's 2019 Oil & Gas Code, in violation of CSA's copyright Z662-19: Oil and Gas Pipeline Systems; (4) Knight's 2015 Propane Code, in violation of CSA's copyright B-149.2-15: Propane Storage and Handling Code; and (5) Knight's 2020 Propane Code, in violation of CSA's copyright B149.2-20: Propane Storage and Handling Code.

[6] Knight also sought declaratory judgment that he was a co-owner or co-author in CSA's Canadian Electrical Code, but that issue was not appealed.

judgment in its entirety. The district court also granted declaratory judgment in favor of CSA, holding Knight's copyright registration invalid as a matter of law,[7] and it granted permanent injunctive relief to CSA, enjoining Knight from further infringing any of CSA's seven copyrighted model codes. Knight appealed the district court's grant of summary judgment and its issuance of injunctive relief.

## II.

"Because this case is before the court on cross motions for summary judgment, we review the district court's rulings de novo and construe all evidence and inferences in favor of the non-moving parties." *Evanston Ins. v. Mid-Continent Cas. Co.*, 909 F.3d 143, 146 (5th Cir. 2018). "We examine 'each party's motion independently.'" *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins.*, 968 F.3d 504, 509 (5th Cir. 2020) (quoting *Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019)).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute over a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357–58 (5th Cir. 2017) (citing *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

Additionally, we "review questions regarding foreign law *de novo*." *Alameda Films SA de CV v. Authors Rts. Restoration Corp.*, 331 F.3d 472, 476 (5th Cir. 2003) (citing *Karim v. Finch Shipping Co.*, 265 F.3d 258, 271 (5th

---

[7] The district court ordered Knight to cancel his U.S. copyright registration with the U.S. Copyright Office. Knight does not appeal that decision and, thus, we do not disturb the district court's order.

Cir. 2001)); *cf. Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 92 (2d Cir. 1998) (noting, in reviewing a district court's application of Russian copyright law, that a "[d]etermination of a foreign country's law is an issue of law"). Both the United States and Canada are signatories to the Berne Convention for the Protection of Literary and Artistic Works. When countries are signatories to the Berne Convention, we are "commit[ed] . . . to apply foreign copyright law when required." *Indusoft, Inc. v. Taccolini*, 560 F. App'x 245, 250 (5th Cir. 2014), *as revised* (Mar. 20, 2014) (citing *Itar-Tass Russian News Agency*, 153 F.3d at 90–91).

## III.

To bring a successful copyright infringement claim, "a plaintiff generally must prove two elements . . . '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir. 2017) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). To prove this second element, a plaintiff must show: "(1) factual copying and (2) substantial similarity." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012) (quoting *Positive Black Talk Inc. v. Cash Money Recs., Inc.*, 394 F.3d 357, 367 (5th Cir. 2004)). The second element has also been referred to as "unauthorized copying." *See Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001).

At the outset, we must determine which law—Canadian or United States—should apply to each element of copyright infringement. Courts, including the Fifth Circuit, have held that the "ownership and essential nature of the copyrights alleged to have been infringed" are determined by the foreign law where the copyrights are held, and "United States law determines whether those copyrights have been infringed in the United States and, if so, what remedies are available." *Itar-Tass Russian News*

*Agency*, 153 F.3d at 84; *see also Alameda Films SA de CV*, 331 F.3d at 477–80 (applying Mexican law to copyright ownership); *Ennio Morricone Music Inc. v. Bixio Music Grp. Ltd.*, 936 F.3d 69, 72 (2d Cir. 2019) (applying Italian law to copyright ownership); *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) ("Initial ownership of a copyrighted work is determined by the laws in the work's country of origin." (internal citations omitted)). Accordingly, we apply Canadian law to questions of copyright ownership, and we apply United States law to questions of infringement.

**A.**

On element one, we agree with the district court, and the parties do not dispute, that CSA owns valid Canadian copyrights in all seven of the at-issue model codes. Canadian copyright law creates a presumption that valid ownership of a copyright rests in the party named on the certificate of registration. Copyright Act, R.S.C. 1985, c. C-42, §§ 34.1(1), 53(2). Moreover, "so long as it is original, any writing may be the subject of copyright in Canada. This would include laws and regulations." *P.S. Knight Co. v. Canadian Standards Ass'n*, 2018 FCA 222 at ¶ 18. Here, it is undisputed that CSA developed its codes in Canada and that "CSA has been awarded Canadian copyright registrations for its standards, including the seven which are at issue in this case." Accordingly, the district court correctly decided that CSA's seven Canadian copyrights are validly owned by CSA.

**B.**

The crux of this dispute hinges on whether Knight has engaged in "unauthorized copying" of CSA's codes. *See Peel & Co.*, 238 F.3d at 394. Knight argues that his copying of CSA's codes is not actionable under the United States' Copyright Act, as CSA's model codes have become "the law" of Canada, and, thus, Knight's copying of that "law" was permissible

under this court's holding in *Veeck v. Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002) (en banc). We agree.

In *Veeck*, the plaintiff, Southern Building Code Congress International ("SBCCI"), a nonprofit organization, developed and copyrighted model building codes in the United States. *Id.* at 793. SBCCI encouraged local governments to enact its model codes into law by reference for no cost. *Id.* at 794. Two Texas cities, Anna and Savoy, chose to do so, incorporating by reference into their laws the model "Standard Building Code" written by SBCCI. *Id.* at 793. In 1997, defendant Peter Veeck posted Anna and Savoy's local building codes on his noncommercial website. *Id.* In order to get a copy of the cities' codes, Veeck purchased the 1994 Standard Building Code from SBCCI and copied and pasted the text directly onto his website. *Id.* Veeck did not specify that the codes were written by SBCCI. *Id.* SBCCI sued Veeck and "demanded that [Veeck] cease and desist from infringing its copyrights." *Id.* at 794.

This court, sitting en banc, held that Veeck did not infringe SBCCI's copyrights in its model building codes. *Id.* at 800. First, this court examined the issue of copyright ownership, and held that SBCCI "indisputably holds a copyright in its model building codes." *Id.* at 794. Second, this court addressed copyright infringement and held that "[w]hen [model] codes are enacted into law, . . . they become to that extent 'the law' of the governmental entities and may be reproduced or distributed as 'the law' of those jurisdictions." *Id.* at 802.

The facts of this case are similar to those in *Veeck*: defendants in both cases reproduced, without permission, copyrighted model codes that had already been fully incorporated by reference into at least one government statute or regulation. However, rather than apply *Veeck*, the district court attempted to distinguish the case. The district court noted that the merger

doctrine and the government edicts doctrine—the two main frameworks applied by the *Veeck* court to reach its holding—both address copyrightability, not infringement. Thus, the district court reasoned that *Veeck* is inapplicable because Canadian law is applied to questions of copyrightability, and Canadian law does not recognize the merger doctrine or the government edicts doctrine.

But our inquiry begins and ends with *Veeck*'s clear holding. *Veeck* explicitly stated that the question before the court was whether "Peter Veeck *infringed* SBCCI's copyright." *Id.* at 794 (emphasis added). In fact, *prior* to reaching its discussion of infringement, the *Veeck* court specifically decided the issue of copyrightability: "As the organizational author of original works, *SBCCI indisputably holds a copyright in its model building codes.*" *Id.* (emphasis added). In other words, by "indisputably" answering the copyrightability question at the outset of the discussion section, the only question that was left for the *Veeck* court to contend with was infringement. And, because United States law applies to questions of infringement, *Veeck* is outcome determinative.[8]

Our colleague in dissent would uphold the district court, focusing on *Veeck*'s analysis rather than its holding. But that interpretation directly contradicts the explicit language of *Veeck*. While the *Veeck* court may have muddied the waters by extensively utilizing copyrightability reasoning throughout its opinion, its holding is clear: model building codes are copyrightable, but once incorporated into law, they are not protected under the Copyright Act. As a three-judge panel, we are bound to follow *Veeck*'s holding.

[8] For the same reasons, the dissent's allusions to Canadian court determinations are inapposite to this court's analysis of whether Knight *infringed* CSA's model codes.

Moreover, the dissent's proposed path conflicts with the policy goals behind our international copyright laws. As noted above, "United States law determines whether [foreign] copyrights have been infringed in the United States and, if so, what remedies are available." *Itar-Tass Russian News Agency*, 153 F.3d at 84. This is for good reason: "[A]n author who is a national of one of the member states of either Berne or the U.C.C., or one who first publishes his work in any such member state, is entitled to the same copyright protection in each other member state *as such other state accords to its own nationals.*" 5 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 17.05 (2023) (emphasis added); *see Itar-Tass*, 153 F.3d at 89 (quoting NIMMER and calling this statement "correct"). In short, we do not give foreign authors stronger copyright protection than that afforded to United States authors.

Under *Veeck*, it is not copyright infringement to copy and reprint "only 'the law,'" where copyrightable model codes have been adopted by reference into law by a governmental entity. *Veeck*, 293 F.3d at 800. The only material difference between *Veeck* and this case is that Knight reprinted only "the law" of Canada while Veeck reprinted only "the law" of two U.S. cities. Holding *Veeck* inapplicable would improperly expand U.S. copyright protection for Canadian (and other foreign) model codes.

We are also not persuaded by CSA's alternative arguments attempting to distinguish *Veeck*. First, CSA points out that *Veeck* dealt with model codes written and implemented in the United States, while this case deals with model codes written and implemented in Canada. This distinction is immaterial. *Veeck* decided that "[w]hen [model] codes are enacted into law, . . . they become to that extent 'the law' of the governmental entities and may be reproduced or distributed as 'the law' of those jurisdictions." *Id.* at 802. *Veeck*'s holding makes no distinction between the law of the United States and the law of any other jurisdiction. Accordingly, when Canadian

jurisdictions incorporate CSA's model codes by reference into their laws, CSA's codes become "the law" of those Canadian jurisdictions, just as SBCCI's codes became "the law" of Anna and Savoy, Texas.

Second, CSA highlights a distinction made by the *Veeck* court between "model codes" and "extrinsic standards." *See id.* at 803–05. While "model codes" serve "no other purpose than to become law," "extrinsic standards" require citizens "to consult or use a copyrighted work in the process of fulfilling their obligation" and have other "non-governmental uses." *Id.* at 804–05. In fact, *Veeck* noted that it was "important" that the standards in that case were not created by "private groups for reasons other than incorporation into law." *Id.* at 805. Here, posits CSA, the seven copyrighted works at issue have other nongovernmental purposes, and are thus distinguishable as "extrinsic standards." A review of the record, however, indicates otherwise.

It is true that (1) CSA's codes are sold to relevant tradespeople working in relevant industrial fields in Canada; (2) CSA's codes are created to "promote improved consistency in . . . installations across the country" and "better protect . . . workers"; and (3) only 40% of CSA's standards are referenced in government regulations. However, these reasons are the same reasons that safety standards are adopted as laws in the first place and are not inapposite with the conclusion that CSA's main reason for producing its codes is to eventually be adopted and enforced by regulatory authorities. Just because only 40% of CSA's standards are presently implemented into government regulation does not mean that CSA does not intend for all of them to be implemented eventually. In fact, the Canadian court noted that the 2015 version of CSA's Electrical Code specifically states in its introduction that it is a "voluntary code [made] *for adoption and enforcement by regulatory authorities*," and, as such, has been adopted by "federal, provincial and territorial governments" in Canada. *P.S. Knight Co.*, 2018

FCA 222 at ¶ 9 (emphasis added). The Canadian court also noted that CSA is accredited by the Canadian Standards Council—a federal Crown corporation—which is empowered to accredit organizations "engaged in standards development" in Canada, and then to approve those standards as "national standards." *Id.* Thus, CSA's copyrighted works, like the copyrighted works in *Veeck*, are "model codes" and are not "extrinsic standards."

Finally, both CSA and the district court contended that because Knight produces wholesale replicas of CSA's copyrighted works, it is copying CSA's model codes "as model codes," and not merely as Canadian law. CSA is correct that *Veeck* carved out a "model codes as model codes" exception. Specifically, the court noted that "the result in [*Veeck*] may have been different if Veeck had published not the building codes of Anna and Savoy, Texas, but the SBCCI model codes, as model codes." *Veeck*, 293 F.3d at 805. However, CSA is incorrect that the exception applies here. Knight copies CSA's codes entirely as "wholesale replicas" because that is how Canadian jurisdictions incorporate CSA's codes into law. There is no indication that Knight publishes anything extra—that is, any material that has not been incorporated into law. Thus, Knight is not publishing CSA's model codes "as model codes," but it is publishing CSA's model codes only and to the extent that those model codes have become "the law" of Canadian jurisdictions.

* * *

Accordingly, the facts in this case are not so dissimilar from the facts in *Veeck* as to merit distinction. Nor do these facts fit into any of *Veeck*'s exceptions. As such, *Veeck*'s holding applies with full force—because CSA's model codes are incorporated into Canadian law, Knight's copying of those codes is not infringement. The district court erred by concluding otherwise.

## IV.

Knight's actions did not constitute copyright infringement as a matter of United States copyright law under *Veeck*.[9] We REVERSE the district court's summary judgment decisions and REMAND with instructions to grant summary judgment in favor of Knight and to dismiss CSA's infringement claim. Additionally, because CSA's claim now fails as a matter of law, we VACATE the district court's grant of injunctive relief.

[9] Because Knight's actions are not infringement as a matter of law, we need not reach Knight's appeal of the district court's decision on fair use.

Dana M. Douglas, *Circuit Judge*, dissenting:

I agree with the majority that the crux of this dispute hinges on whether Knight's copying of Canadian law was permissible under our holding in *Veeck v. Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002) (en banc). However, because I interpret *Veeck* differently, I depart ways with the majority and respectfully dissent.

"To prove copyright infringement, a plaintiff must show 'ownership of a valid copyright' and 'copying' by the defendant." *Batiste v. Lewis*, 976 F.3d 493, 501 (5th Cir. 2020) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). I agree with the majority that CSA owns valid Canadian copyrights in all seven of the at-issue model codes. But I disagree that *Veeck*'s holding on infringement is outcome determinative in this case.

Although *Veeck* considered whether one party *infringed* on another's model codes, its analysis focused on whether model codes are *copyrightable*. 293 F.3d at 794. "Our short answer is that as *law*, the model codes enter the public domain and are not subject to the copyright holder's exclusive prerogatives. As model codes, however, the organization's works *retain their protected status*." *Id.* at 800 (emphases added). In other words, model codes are copyrightable, but adopted law is not—and what is not copyrightable cannot be infringed. This is demonstrated throughout the opinion.

For example, in reviewing Supreme Court decisions on copyrightability, we found that "there is no reason to believe that state or local laws are *copyrightable*." *Id.* at 796 (emphasis added). Those decisions "consistently [] enunciate the principle that 'the law,' whether it has its sources in judicial opinions or statutes, ordinances or regulations, is not subject to federal copyright law." *Id.* at 800. To that end, we held that "[a]s governing law . . . the building codes of Anna and Savoy, Texas cannot be *copyrighted*." *Id.* at 796 (emphasis added).

Of course, *Veeck* speaks to infringement. But to determine whether the model building codes of Anna and Savoy, Texas, could be infringed, the court needed to determine whether those codes were in fact *copyrightable*. And in a thorough opinion, our en banc court determined that once adopted as "the law" in the United States, those codes lost their copyright protection and could not be infringed upon. Knight argues that his copying of CSA's codes is not actionable under the United States' Copyright Act because CSA's model codes have become "the law" of Canada, and, thus, Knight's copying of that law was permissible under *Veeck*.

But Canada has determined that CSA's model codes, whether adopted into Canadian law and regulations or not, are copyrightable. *P.S. Knight Co. v. Canadian Standards Ass'n*, 2018 FCA 222 at ¶ 18. Canada, whose determinations on copyrightability are conceded by the majority and Knight, does not make a distinction between adopted and unadopted model codes. Accordingly, *Veeck*'s *reasoning* is inapplicable because it is premised on our understanding that "the law" in the United States is not copyrightable, unlike it is in Canada.[1]

Having distinguished *Veeck*, this case is fairly straightforward. As the district court found, "[t]he facts here present the rare case in which there is direct evidence that defendants copied plaintiff's work." Aware of this,

[1] Although the district court approached this question differently, its opinion reinforces my understanding of *Veeck*'s application to these facts. Focusing on the government edicts doctrine, the district court rejected Knight's argument that the copyrights are invalid because nobody "can own the law." "[T]he validity of a foreign copyright is determined based on compliance with the foreign government's copyright law, not United States law." Further, courts have only applied the government edicts doctrine to laws of the United States, including our court in *Veeck*. Even the text of the Copyright Act limits copyright carve-out for government edicts to "any work of the *United States Government*." 17 U.S.C. § 105(a) (emphasis added). But CSA's works were "authored in Canada by a private Canadian organization and incorporated only into *Canadian* law."

Knight's second argument is that the district court erred in granting summary judgment to CSA on Knight's fair use defense. In applying the fair use doctrine, we consider the following factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107; *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 321 (5th Cir. 2022). Here, the overwhelming balance of factors cautions against a finding of fair use.

First, Knight's Codes are not transformative, as they are simply copies of CSA's code. Beyond providing nothing transformative, their purpose is entirely commercial—Knight is not a nonprofit, but a business, who is actively engaged in undercutting CSA's prices to make money for itself. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985) ("The fact that a publication was commercial as opposed to a nonprofit is a separate factor that tends to weigh against a finding of fair use."). The commerciality of Knight's use distinguishes this case from *American Society for Testing & Materials v. Public.Resource.Org Inc.*, 896 F.3d 437 (D.C. Cir. 2018) (*ASTM I*) and *American Society for Testing and Materials v. Public.Resource.Org Inc.*, 82 F.4th 1262 (D.C. Cir. 2023) (*ASTM II*). There, defendant was a nonprofit that hosted a *free* website with the purpose of increasing access to the law and other government materials. *ASTM I*, 896 F.3d at 443-44. These cases suggest that posting enacted laws for the

purpose of educating members of the public is a transformative use. *See ASTM II*, 82 F.4th at 1268. But Knight was not a nonprofit, and though his copies cost less than CSA's, charging $60 is by no means free. Thus, *ASTM I* and *II* have no bearing on the instant matter.

Additionally, the propriety of Knight's conduct—incorporating a new entity in the United States and transferring assets to that entity to be "outside the direct jurisdiction of the [Canadian] Federal Court" that held it in contempt—weighs against a finding of fair use. *See Harper & Row*, 471 U.S. at 562. ("Also relevant to the 'character' of the use is 'the propriety of the defendant's conduct.") (internal citation omitted).

Although the second factor may be neutral, the third factor also weigh against fair use, as Knight's Codes are not transformative, and CSA's works are copied in their entirety. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 587-88 ("[A] work composed primarily of an original, particularly its heart, with little added or changed, is more likely to be a merely superseding use, fulfilling demand for the original."). Knight even advertises his code as "the same." As to the fourth factor, it too weighs against fair use because, as the district court noted, there is evidence in the record that CSA has suffered market harm because of Knight's actions. On balance, the factors weigh against a finding of fair use.

As a final note, Knight's conduct in this case was egregious, and a contrary opinion would effectively condone this behavior. Having concluded that *Veeck* is distinguishable and therefore not outcome determinative in this case and that the defense of fair use is unavailable to Knight, I would affirm the district court.